SLR:LDM
F.#2011V02672

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

              Plaintiff,

       - against -

REAL PROPERTY AND PREMISES LOCATED AT
26 BOW STREET, FOREST HILLS, NEW YORK
11375, UP TO AND INCLUDING THE SUM OF
$465,326.33,

          Defendant In Rem.

- - - - - - - - - - - - - - - - - - -X

**CV 12 - 3229**

Verified Complaint
In Rem

Civil Action No.

**BRODIE, J.**

**GOLD, M.J.**

      Plaintiff, UNITED STATES OF AMERICA, by its attorney,

LORETTA E. LYNCH, United States Attorney for the Eastern District

of New York, LAURA D. MANTELL, Assistant United States Attorney,

of counsel, alleges upon information and belief as follows:

### PRELIMINARY STATEMENT

      1.    This is a civil action in rem, pursuant to 18

U.S.C. § 985, to forfeit and condemn to the use and benefit of

the United States the real property and premises located at 26

Bow Street in Forest Hills, New York, also designated as Block

3252 Lot 36 in the Borough of Queens, County of Queens, City and

State of New York, together with its respective buildings,

appurtenances, improvements, fixtures attachments, and easements

(the "Property"), up to and including the sum of $465,326.33,

pursuant to 31 U.S.C. § 5317(c), as property involved in a

violation or violations of 31 U.S.C. §§ 5313 and/or 5324, or a conspiracy to commit any such violations, and/or as property traceable to any such violation or conspiracy.

### JURISDICTION AND VENUE

2.   This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

3.   Venue in the Eastern District of New York is proper, pursuant to 28 U.S.C. §§ 1355 and 1395, in that the acts and omissions giving rise to the forfeiture occurred in the Eastern District of New York, and the Property is located in the Eastern District of New York.

### STATUTORY BACKGROUND

4.   Pursuant to 31 U.S.C. § 5313(a) and the regulations promulgated thereunder, when a domestic financial institution, including banks and money service businesses, is involved in a transaction for the payment, receipt, or transfer of U.S. currency in an amount greater than $10,000.00, the institution shall file a currency transaction report ("CTR") for each cash transaction, such as, by way of example, a deposit, withdrawal, exchange of currency or other payment or transfer by, through, or to a financial institution.

5.   CTRs are filed with the Financial Crimes Enforcement Network  at the Detroit Data Center on forms that require disclosure of, among other information, the identity of

-2-

the individual who conducted the transaction and the individual
or organization for whom the transaction was completed.

6. These regulations also require that multiple
transactions be treated as a single transaction if the financial
institution has knowledge that they are conducted by, or on
behalf of, the same person, and they result in currency either
received or disbursed by the financial institution totaling more
than $10,000.00 during any single business day.

7. Many individuals involved in illegal activities,
such as narcotics trafficking, tax evasion and money laundering,
are aware of the reporting requirements and take active steps to
cause financial institutions to fail to file CTRs in order to
avoid detection of the movement of large amounts of cash. These
active steps are often referred to as "structuring" and involve
making multiple cash deposits or withdrawals in amounts less than
$10,000.00 on the same day or consecutive days in order to avoid
the filing of CTRs. Structuring is prohibited by 31 U.S.C.
§ 5324(a)(3).

8. Pursuant to 31 U.S.C. § 5324, it is a crime for an
individual to (a) "cause or attempt to cause a domestic financial
institution to fail to file a report required under § 5313(a)",
(b) "cause or attempt to cause a domestic financial institution
to file a report required under § 5313(a) . . . that contains a
material omission or misstatement of fact," or (c) "structure or

-3-

assist in structuring . . . any transaction with one or more

domestic financial institutions" for the purpose of evading the

reporting requirements of 31 U.S.C. § 5313(a).

9.    Furthermore, 31 U.S.C. § 5317(c) provides for the

forfeiture of any property involved in a violation of 31 U.S.C.

§ 5324, or any conspiracy to commit any such violation, and any

property traceable to any such violation or conspiracy.

### FACTUAL BACKGROUND

10.    Jeffrey S. Brandler is an officer of Game World

Distributors, Inc. a wholesale distributor of video games and

systems located in Corona, New York. Jeffrey S. Brandler resides

at the Property. Jeffrey S. Brandler jointly purchased the

Property with his brother, Harry J. Brandler, in November 2008

for $2,150,000. Harry J. Brandler, who resides at 921 Washington

Avenue in Pelham, New York, is the Chief Financial Officer of

Greenlight Masters GP LLC, a hedge fund that invests in corporate

debt and equity.

11.    According to bank records, on or about November

17, 2008, Jeffrey S. Brandler and Harry J. Brandler obtained a

thirty (30) year variable rate mortgage (the "Mortgage") from

CitiMortgage, Inc., account number XXXXXX1122 which was to be

paid in full by December 1, 2038 in the amount of $1,100,000.

The Property serves as collateral for the Mortgage. In addition,

on or about September 2, 2009, Jeffrey S. Brandler and Harry J.

-4-

Brandler obtained a home equity line of credit mortgage (the

"HELOC ") from Citibank, N.A., account number XXXXXX4736 with a

"Credit Limit" in the amount of $420,000. As with the Mortgage,

the HELOC is secured by the Property.

12. According to bank records, during the period

between January 2009 and October 2011 there were approximately

forty-eight (48) structured cash payments, in the total amount of

approximately $465,326.33, made towards the Mortgage and the

HELOC, both of which were secured by the Property. Below is a

chart that sets forth the date, amount and account for these

structured payments. Each of the cash payments was made at

branches of Citibank located in Queens, New York.

| PAYMENT DATE | MORTGAGE, CITIMORTGAGE ACCOUNT # 1122 | HELOC, CITIBANK ACCOUNT # 4736 |
|---|---|---|
| 01/05/09 | $9,583.33 | |
| 02/05/09 | $9,900.00 | |
| 03/06/09 | $9,900.00 | |
| 04/06/09 | $9,900.00 | |
| 05/07/09 | $9,900.00 | |
| 11/10/09 | | $9,900.00 |
| 12/03/09 | $9,900.00 | |
| 12/08/09 | | $9,055.00 |
| 01/08/10 | | $9,900.00 |
| 01/26/10 | $9,900.00 | |
| 02/04/10 | | $9,880.00 |
| 03/04/10 | $9,700.00 | |

-5-

| Date | | |
|---|---|---|
| 03/11/10 | | $9,800.00 |
| 04/15/10 | | $9,500.00 |
| 05/06/10 | | $9,980.00 |
| 06/04/10 | | $9,950.00 |
| 07/08/10 | | $9,900.00 |
| 07/21/10 | | $9,688.00 |
| 08/19/10 | $9,900.00 | |
| 09/02/10 | | $8,250.00 |
| 09/13/10 | $9,950.00 | |
| 10/07/10 | | $7,354.00 |
| 10/14/10 | | $9,980.00 |
| 11/01/10 | $9,980.00 | |
| 11/15/10 | | $8,250.00 |
| 11/18/10 | $9,900.00 | |
| 12/15/10 | $9,900.00 | |
| 12/22/10 | | $9,950.00 |
| 01/13/11 | | $9,950.00 |
| 01/27/11 | $8,250.00 | |
| 02/14/11 | | $9,900.00 |
| 02/26/11 | $9,000.00 | |
| 03/12/11 | $9,950.00 | |
| 03/17/11 | | $9,980.00 |
| 04/13/11 | | $9,900.00 |
| 04/19/11 | $9,800.00 | |
| 05/16/11 | | $9,750.00 |
| 05/24/11 | $9,800.00 | |
| 06/22/11 | $9,900.00 | |
| 06/27/11 | | $9,900.00 |
| 07/13/11 | | $9,980.00 |
| 07/30/11 | $9,900.00 | |
| 08/09/11 | | $9,900.00 |

-6-

| 08/23/11 | $9,950.00 | |
|---|---|---|
| 09/12/11 | | $9,980.00 |
| 09/20/11 | $9,956.00 | |
| 10/07/11 | | $9,980.00 |
| 10/25/11 | $9,950.00 | |
| | | |
| **TOTALS:** | **$224,769.33** | **$240,557.00** |

13.   According to records relating to the Mortgage and the HELOC, each of the above payments was in excess of the amount that the Brandlers were required to pay on the Mortgage and the HELOC.  According to the same documents, the excess amount of the cash payments, made just below the reporting requirement, would have been applied towards the outstanding principal amounts owed on the Mortgage and the HELOC.

14.   Each of the above cash payments was made in an amount of less than $10,000.01 in order to avoid the filing of a CTR.

15.   On or about November 8, 2011 a representative from Citibank N.A., contacted Harry J. Brandler regarding the nature of the cash payments on the Mortgage and the HELOC. On or about November 14, 2011, Harry J. Brandler responded to the bank representative and informed him that his brother Jeffrey S. Brandler, was making the cash payments on the Mortgage and the HELOC, and that the source of the payments was from the paychecks he received from his company.

-7-

## **CLAIM FOR RELIEF**

16.   Plaintiff repeats the allegations of paragraphs 1 through 15 as if fully set forth herein.

17.  The Property, up to and including the sum of $465,326.33, and all proceeds traceable thereto, was involved in and/or is traceable to transactions or attempted transactions which were structured with the intent to avoid currency reporting requirements under federal law, in violation of 31 U.S.C. §§ 5313 and/or 5324.

18.   As a result of the foregoing, the Property, up to and including the sum of $465,326.33, and all proceeds traceable thereto, is liable to condemnation and to forfeiture to the United States in accordance with 31 U.S.C.
§ 5317(c).

**WHEREFORE,** plaintiff, United States of America requests that, pursuant to 18 U.S.C. §§ 983 and 985, notice of this Verified Complaint be issued as to the Property; that due notice of these proceedings be given to all interested persons; that after further proceedings, the Property, up to and including the sum of $465,326.33, be forfeited and condemned to the use of the United States of America; and that the plaintiff be awarded its

-8-

costs and disbursements in this action and for such other relief

and further relief as this Court deems just and proper.

Dated:     Brooklyn, New York
           June 25, 2012

                              LORETTA E. LYNCH
                              UNITED STATES ATTORNEY
                              Eastern District of New York
                              Attorney for Plaintiff
                              271 Cadman Plaza East
                              Brooklyn, New York 11201


           By:

                              Laura D. Mantell
                              Assistant U.S. Attorney
                              (718) 254-6253

## VERIFICATION

Jeffrey Miller, hereby declares as follows:

1.    I am a Special Agent with the Internal Revenue Service.

2.    I have read the within Verified Complaint <u>In</u> <u>Rem</u> and know the contents thereof.

3.    I believe that the matters contained in the within Verified Complaint <u>In</u> <u>Rem</u> are true and accurate to the best of my knowledge, information and belief.

4.    The source of my information and the grounds for my belief are personal knowledge, information provided by other law enforcement officers, and the official files and records of the United States of America.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:    Brooklyn, New York
          June 25, 2012

_____
Jeffrey Miller
Special Agent
Internal Revenue Service

10